## Morelli v. The Aetna Casualty and Surety Co.

*William C. Massinger*, for plaintiff.

*Robert S. Gawthrop, Jr.*, for defendant.

KURTZ, J., July 3, 1963.—By this suit in assumpsit, plaintiffs seek to recover from their insurance carrier that sum which they have been required to pay as damages arising out of the delivery of the wrong type of fuel oil by plaintiffs' agent into a customer's plant, thereby causing a stoppage in its operation, together with counsel fees and costs incurred in defense of the action instituted against them by the customer. The pleadings consist of a complaint, an answer thereto with which new matter was filed, and a reply to the new matter. Plaintiffs have moved for judgment on the pleadings. In our consideration of that motion, we must accept as true defendant's averments of fact which are material and relevant. Judgment should not be entered except upon a showing that the right is clear and free from doubt: London v. Kingsley, 368 Pa. 109 (1951); Gaul v. Philadelphia, 384 Pa. 494 (1956).

The facts which defendant avers are as follows:

Defendant, by insuring plaintiffs against property damage liability, agreed to pay on their behalf all sums which they "shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of . . . (t)he ownership, maintenance or use, . . . of the automobiles described there-

in." An endorsement to the policy designated "ER-RONEOUS DELIVERY OF LIQUID PRODUCTS" provided:

"It is agreed that the insurance afforded by the policy . . . for Property Damage Liability does not apply to accidents arising out of the delivery of any liquid product into a wrong receptacle or to a wrong address or the erroneous delivery of one liquid product for another, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof. Such operations shall be deemed complete even though improperly or defectively performed, or performed at the wrong address or even though further operations may be required pursuant to a service or maintenance agreement."

On June 19, 1961, while the policy was in force, plaintiffs' driver delivered a quantity of no. 6 fuel oil from one of the trucks listed as being covered by the insurance into a customer's tank at its paper manufacturing plant in this county. No. 5 oil should have been delivered. By so doing, damage was caused to the customer's boiler and other charges and expenses were incurred. The customer sued plaintiffs, who gave notice to defendant, but defendant refused to defend the suit. A board of arbitrators, acting under our compulsory arbitration procedure, made an award against plaintiffs in favor of the customer which plaintiffs have now paid. This suit is now brought to recover the amount of that award plus counsel fees and costs.

We must first decide whether plaintiffs' claim represents damages which they became legally obligated to pay and which were "caused by accident . . . arising out of the . . . use" of one of their automobiles. In the interpretation of insurance contracts, an accident has been defined to be an occurence which proceeds from an unknown cause or which is the unusual effect of a known cause and hence unexpected and unforeseen:

The North American Life and Accident Insurance Co. v. Burroughs, 69 Pa. 43 (1871); Lacey v. Washburn & Williams Co., 309 Pa. 574 (1933); Springfield Township v. Indemnity Insurance Company of North America, 361 Pa. 461 (1949).

In Casper v. American Guarantee and Liability Insurance Co., 408 Pa. 426 (1962), a contractor who was engaged in the remodeling of a building brought suit under a comprehensive general liability policy which provided property damage coverage to him in language identical with that included in the policy now before us. In the course of the performance of his contract certain personal property belonging to an occupant of the building being remodeled was damaged, it being alleged by the owner of that property that the contractor had ". . . caused to be deposited . . . upon . . . the plaintiff's goods . . . large quantities of dirt, dust, plaster . . ." as the result of his negligence in failing to cover such goods and in failing to water down the materials handled. In denying the contractor's claim, the Supreme Court defined an accident as being "an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency." (page 430). Such an event was said to be an occurrence "happening by change unexpectedly taking place not according to the usual course of things or not as expected." (page 431). It ". . . is the antithesis of something likely to occur, foreseeable in due course. If an occurrence is the ordinary and expected result of the performance of an operation, then it cannot be termed an accident. To constitute an accident, the occurrence must be an 'unusual or unexpected result attending the operation or performance of a usual or necessary act or event'; Hey v. Guarantors' Liability Indemnity Co., 181 Pa. 220, 37 A. 402. And see Hamilton v. American Indemnity Co., 82 Pa. Superior Ct. 191." (page 431). It was held that the acts com-

plained of in the complaint of the owner of the damaged property could not be construed as alleging damages "caused by accident" because the harmful conduct was "reasonably calculated to cause substantial damage of the very sort that occur (red)." Judgment against the contractor was entered on the pleadings.

In the instant case, plaintiffs' agent made a mistake. Whether his mistake was the result of his neglect, as in Casper, supra, or that of someone else does not appear. In any event, that which he did cannot be considered an occurrence which proceeded from an unknown cause; neither can the result be said to be the unusual effect of a known cause. On the record now before us we would not be justified in reaching either conclusion.

A mistake in the delivery of one type of oil for another is not an event which takes place without foresight or expectation. It is a deliberate thing performed in accordance with the will of the doer, albeit done in an erroneous manner. It is not an undesigned, sudden or unexpected event depending upon chance or contingency, but is the result of oversight or neglect as distinguished from chance.

Although the averments now before us merely state that as the result of the error the customer's boiler was damaged, we cannot help but assume that the damage which occurred was the ordinary and expected result of that which was done; hence, not an accident in that sense either. The harmful conduct here asserted, i.e., the delivery of the wrong type of oil, was reasonably calculated to cause the boiler damage averred with its attendant stoppage of work in the plant. Accordingly, summary judgment for plaintiffs cannot be entered on the present state of the record.

Parenthetically, we note that defendant has reimbursed plaintiffs for the value of the oil already in the customer's tank at the time of the erroneous delivery

which was contaminated by the new oil then introduced into it. By so doing, defendant has admitted in effect that plaintiffs' mistake was an accident. It contends, however, that its liability ended under the terms of the erroneous delivery endorsement, with the completion of the delivery and that the damage to the boiler and the plant stoppage occurred after the delivery had been completed. Nothing in the pleadings tells us when the boiler damage occurred. It is merely averred that it occurred as the result of the action of plaintiffs' agent. In view of what we have already said, the decision of that question is not necessary to a disposition of the present motion. If there has been no accident, then defendant would not be responsible no matter when the damage occurred. It would appear, therefore, that defendant may not have been liable for that sum which it has already paid.

As we have already indicated, plaintiffs' motion for judgment in their favor must be denied. We enter the following order to that effect.

### Order

And now, July 3, 1963, plaintiffs' motion for judgment on the pleadings is refused.